UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SUSAN SHEA,<br><br>     Plaintiff,<br><br>-v-<br><br>FAIRCHILD AUTO-MATED PARTS INC.,<br>CHARLES "CHUCK" CLARK<br><br>     Defendants. | CIVIL ACTION NO.<br><br><br><br><br><br>MARCH 1, 2013 |

## COMPLAINT-JURY TRIAL DEMANDED

**PRELIMINARY STATEMENT**

This action is brought by plaintiff, Susan Shea and seeks damages arising out of defendant's discrimination against her in the basis of gender and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, *42 U.S.C§2000e, et seq.*, the Civil Rights Act of 1991, *42 U.S.C. §1981a* and the Connecticut Fair Employment Practices Act ("CFEPA").

**PARTIES**

1. Susan Shea ("plaintiff" and/or "Ms. Shea") is a citizen of the State of Connecticut, with her principal place of residence in Winsted, Connecticut. The plaintiff has been married for about 30 years, and has 3 adult children.

1

2. The Defendant Fair Child-Automated Parts, Inc. ("Employer defendant" and or "Fairchild") of 10 White Street, Winsted, CT 06098.

3. The Defendant Charles "Chuck" Clark ("Charles", or "Chuck" or "Clark") is a Citizen of Connecticut and was a senior machinist at Fairchild Auto-Mated Parts, Inc.

**JURISDICTION AND VENUE**

4. Jurisdiction over the subject matter of this litigation exists under Title VII of the Civil Rights Act of 1964, as amended *42 U.S.C§2000e, et seq.*, the Civil Rights Act of 1991, *42 U.S.C. §1981a.* As to those claims not arising under federal law but clearly so related to the claims in this action within the original jurisdiction of this Court, jurisdiction exists under the doctrine of supplemental jurisdiction as codified in *28 U.S.C §1367*.

5. Plaintiff timely filed administrative charges of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and Equal Employment Opportunity Commission ("EEOC") on December 22, 2010 and has received a Right to Sue letter from the EEOC on December 6, 2012 dated November 29, 2012. This suit was filed by the deadline. Copies are attached hereto as Exhibit A.

6. Venue is proper in this District pursuant *to 28 U.S.C. §§ 1391 (b)(1) and (2)*, as the unlawful conduct complained of herein took place within the District of Connecticut and all parties reside in the District.

**STATEMENT OF FACTS**

7. The Defendant employs more than 15 persons. The Defendant Fairchild Auto-Mated, Inc. is a Connecticut corporation with its principal place of business at 10 White Street, Winsted, Connecticut, and at all relevant times hereto were in the business of machine/tools/parts manufacturing.

8. The Plaintiff Susan Shea is female.

9. Plaintiff started employment for the Defendant in February 2007. Her last position was that of office assistant. While this was the title of the position, she took orders/directives from all the other employees as she was the newest employee. Her job also entailed copying, faxing, purchase ordering, accounts receivable, accounts payable, answering phones, filing, researching, among all other administrative duties. This was a very noisy environment as it was a machine shop with approximately 20 employees.

10. The Plaintiff was hired at a rate of $10 per hour as a part time employee, working approximately 20 hours per week. She worked approximately 4 hours per day, but there was no set time schedule as the Defendant employer would tell her what time to come to work on an as needed basis for the 4 hour schedule. In essence, she had flexible time that was to the accommodation of the Defendant employer. Within a week of the hire, the Defendant Employer increased the part time hours from about 20 hours a week to between 30 to 35 hours per week.

11. Plaintiff's location/work space at the employer's facility was adjacent to that of Defendant Charles Clark. Her desk was about 6 feet away from his office door. Although Clark was a senior machinist who operated machine(s) on the machine shop/factory floor, he also had an

office in the administrative offices within Fairchild's facility in Winsted, Connecticut. His administrative office was about six feet away from the Plaintiff's desk. He was in charge of purchase orders which Plaintiff had to call in telephonically. She had to report any purchase order issues to him. He was her supervisor at Fairchild.

12. Both the Plaintiff and Charles Clark were in a secluded area within the office facility as everyone else was positioned on the other side of the administrative offices.

13. Some time on or about May 2007, shortly after Plaintiff started working at Fairchild, Charles Clark started making comments to the Plaintiff about her physical appearance. On several occasions and repeatedly whenever Charles Clark walked by the Plaintiff's desk on the way to or out of his office he would make comments to her, or whenever she went to discuss a purchase order with him. Whenever she went to discuss a purchase orders from him or ask him a question regarding the purchase order due to the fact that she took her directives from him regarding the purchase orders he would say "Why are you so stupid?  You should stop dying your hair blonde; the bleach is seeping into your brain." From time to time whenever questions arose, Charles Clark would refer to the plaintiff as "a dumb Polack." The Plaintiff is of Polish and Lithuanian descent, these comments continued for months. The Plaintiff found the comments offensive and hurtful, but she was afraid to make any complaints.

14. Sometime on or about June or July 2007, apart from making comments about Plaintiff's physical appearance and sexuality, Charles Clark would kick and sometimes push the back of the Plaintiff's chair while the Plaintiff was seated in the chair. He would also throw the purchase orders at the Plaintiff at least five (5) times a day even though there is a basket on her desk in which to place the purchase orders. The thrown purchase orders would sometimes hit her in the face, or other parts of her anatomy. Sometimes the purchase orders would be

4

thrown on the floor so that the Plaintiff would have to get up and/or bend over to pick up the Purchase Order(s) from the floor. This behavior towards the Plaintiff by Charles Clark continued on a daily basis up until about July 2009.

15. Prior to going to work for Fairchild, the Plaintiff was a stay at home mother for approximately twelve (12) years. She was happy to have found employment after being out of the workforce for a long period of time and she was afraid to complain about her treatment in the hands of Charles Clark for fear of retribution, or losing her job.

16. On or about August 2009, the Plaintiff took ill and a result of her medical condition she was out of work for about two or three months.

17. Plaintiff was able to return to work about mid-November 2009. Upon her return to her work at Fairchild, she worked about two (2) days a week for a couple of hours each day. There was still no set time, or schedule for the Plaintiff to show up at work. Her work time and schedule were based on the needs/requirements of the defendant employer; it was on an as needed basis, but it was consistent.

18. Upon Plaintiff's return to work in November 2009 Charles Clark's behavior continued; he continued to push her chair back and kick her chair while she seated in the chair, throw purchase orders at her; as well as make comments about her sexual orientation. Call her names such as "dyke," "bitch," and a "dumb Polack."

19. On or about February 2010 due to her medical condition Plaintiff had experienced drastic weight loss, her shoulder length hair was falling out and had to be cut extremely short. When she went to work after her hair had been cut extremely short the harassment and verbal abuse continued, but at a heightened level. He would make comments to her such as "I knew you were always a lesbian; you look like a boy now." He would also say to the Plaintiff almost on a daily basis "you look like a dyke now," "how is that pussy you've been eating."

5

20. In May 2010 Charles Clark made a comment about the plaintiff's hair and her being a "dyke." Plaintiff was emphatic in telling Charles Clark to leave her alone and she told him that she had a medical condition and it was bad enough that she had to cut her hair extremely short. She was tired of all the comments he had been making as well as the way he treated her. He had brought her to tears and she cried uncontrollably. Charles Clark laughing then said to the Plaintiff "open your mouth and I'll give you a shot of protein."

21. Plaintiff was very upset. She felt humiliated, embarrassed, helpless and emotionally devastated. Plaintiff was on her way to the purchasing area when this occurred. Linda Chriss an employee in the shipping department happened to be in the vicinity to the Plaintiff. Ms. Chriss said to the Plaintiff "did I hear what I just heard?" and also said "you need to do something about him, this needs to stop," after the Plaintiff told her that Clark had been calling her names for a long time.

22. Plaintiff went to Angelo Zappone who at the time, was the manufacturing manager at Farichild and complained about the derogatory remarks that Charles Clark had been making towards her. She informed him that Linda Chriss heard Clark's comment(s) on this occasion. She told Zappone that she was upset and angry, humiliated, distraught and bullied by Clark.

23. Mr. Zappone said that Clark has had problems in the past with sexually harassing other employees and that they all had to take sexual harassment training because of Clark. This was the first time Plaintiff learned of Clark having a history of sexually harassing others at Fairchild. Zappone told her to report it to the owner of Fairchild.

24. The next day Plaintiff put her complaint in writing and sent it to Zappone via email. (Copy of the email is attached and marked exhibit B.

6

25. A few days later, Plaintiff was approached by the Office Manager, Ellen Pettit, who wanted to meet with her in the conference room. She was asked by the Office Manager about her complaint. Plaintiff reiterated that she was called degrading names, sexually harassed, verbally abused, physically abused and emotionally battered by Clark. Ms. Pettit stated that "this is horrible" and that she will speak to Jake Thompson (President of Fairchild) about it and get back to her. Ellen Pettit never got back to the Plaintiff.

26. Following Ellen Pettit's acknowledgement of Plaintiff's complaint, Plaintiff was returning completed purchase orders to shipping and on the way to the shipping/receiving area Charles Clark came out into the walk-way from the machine area with a tool (wrench) in his hand, and stood in front of Plaintiff slapping the tool held in his left hand into his right hand, which he had shaped like a whole, glaring at Plaintiff simulating sex. Plaintiff immediately reported this incident to Ellen Pettit, who told her to ignore Clark and just walk around him.

27. Shortly after her meeting with Ellen Pettit, Jake asked to meet with the Plaintiff. He asked about the complaint she had made about Clark. She reiterated once again all the allegations above regarding being sexually harassed, verbal abuse, physical abuse and emotional as well as mental abuse in the hands of Clark. She told him about "the shot of protein in her mouth," being called a "dyke," and lesbian. Jake informed her that Fairchild had other employees who were sexually harassed by Clark which led to sexual harassment training for all employees before the Plaintiff was hired. He informed her that he would investigate the matter. He asked her why she had not complained earlier, and she told him that she loved as well as needed her job at Fairchild.

28. Jake told Plaintiff that Clark was a valuable employee at Fairchild, because he is a Brown & Sharp machinist. He stated that these types of machinists were few and far between. He said

7

that Clark was thus a very valuable employee. He also told her that he was disgusted by how she was being treated. He promised to investigate and get back to the Plaintiff. This was in June.

29. After she file the complaint about Clark, the harassment and abuse stopped briefly. Ellen Pettit placed an additional basket on her desk for Clark to place the purchase orders. Her office location was not changed. Her desk was still about six (6) feet away from Clark's office. She and Clark were still in a secluded area away from the employees.

30. On or about August 25, 2010 the Office Manager Ellen Pettit and Company President Jake Thompson requested a performance review with Plaintiff. At the end of the review Plaintiff was asked if she had any questions; she inquired about her complaint. Plaintiff was informed that they spoke with Charles Clark and that Mr. Clark denied the allegations. In addition they informed Plaintiff that her work hours would be increased to 30 hours, working daily from 11AM to 5PM Monday through Friday. They indicated that Plaintiff had seventeen (17) days off in the past year, and has received personal phone calls. This was all new to the Plaintiff as the days off were either because of medical issues or because the employer did not need her. They also informed her that they would like her to take on new tasks. This was the first time in three (3) years that the Plaintiff has worked at Fairchild whereby there was an annual review.

31. Plaintiff inquired whether any steps were being taken to protect her against Clark. Both Jake Thompson and Ellen Pettit stated that Clark denied all allegations and that a written reprimand was put in personnel file. Plaintiff felt humiliated and violated again, because her worst fear that if she complained no steps will be taken by the employer to protect her had come true.

32. Plaintiff then requested a letter of personal reference from the Defendant employer, and was asked by Office Manager "what was going on?" Plaintiff requested a documented disposition on the filed complaint and was told by Ellen Pettit, Office Manager that "I would have to speak to Jake about it." The complaint was closed with a written reprimand according to the Office Manager back in July 2010.

33. In September 2010 Plaintiff submitted two (2) week's notice to Defendant Employer because the work environment became unbearable. A week before Plaintiff's last day of employment, Plaintiff spoke with Edward Croke, a machinist at the time who stated "what are you still doing here? I thought you were leaving? Chuck was out here the other day and he was saying how Jake was going to fire him and he told Jake if you fire me, I'll sue you." On September 15, 2010 Plaintiff brought her personal box and took her items and went in to speak with the President and informed her that she was leaving on that day. Mr. Thompson then said "wait, we need to talk. I never said that I would have Chuck apologize to you. What's the big deal anyway, it was only a name."

34. After Plaintiff left the defendant's employment, she discovered that a former employee, Lori Chernyha, was sexually harassed by Clark and Fairchild took no action to correct the practice after she filed a complaint. Ms. Chernyha's affidavit is attached and marked as Exhibit C. Fairchild by its own admission, knew, or must have known that Clark was sexually harassing female workers, but refused to take/make corrective action(s).

## FIRST COUNT (42 U.S.C §2000, TITLE VII-DISCRIMINATION TO ALL DEFENDANTS)

35. Plaintiff hereby repeats and realleges paragraphs 1 to 34 as if more fully set forth herein.

36. Defendant is an "employer" as defined by *42 U.S.C § 2000e (b)*.

37. Defendant all times relevant hereto has employed more than 15 employees

9

38. Plaintiff suffered a continuing violation of hostile work environment sexual harassment at Fairchild from February 2007 through September 2010.

39. Defendant's conduct, by and through its agents, in treating plaintiff in the manner unequal to other employees, discriminatorily denied plaintiff equal treatment of the basis of sex, in violation of Title VII, as amended by the Civil rights Act of 1991.

40. Defendant, in failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite its knowledge of the conduct, discriminatorily denied plaintiff equal treatment on the basis of sex, in violation of Title VII, as amended by the Civil Rights Act of 1991.

41. In so treating plaintiff, an in ipso facto constructively terminating plaintiff, all because of her sex, defendant subjected plaintiff to illegal discrimination.

42. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic, physical and emotional harm.

## SECOND COUNT ( C.G.S. § 46A-60(a)(1)-UNLAWFUL DISCRIMINATION TO ALL DEFENDANTS)

43. Plaintiff hereby repeats and realleges paragraphs 1 to 42 as if more fully set forth herein.

44. Plaintiff was at all times relevant hereto as "employee" as that term is defined in *C.G.S. § 46a-15(9)*.

45. Defendant is an "employer" as that term is defined in *C.G.S. § 46a-51(10)*.

46. At all relevant times hereto, defendant employed more than three persons.

47. Defendant's conduct, by and through its agents, in treating plaintiff in the manner unequal to other employees, discriminatorily denied plaintiff equal treatment on the basis of sex, in violation of *C.G.S.§ 46a-60(a)(1)*.

48. Defendant, in failing to adequately investigate and remedy the treatment to which plaintiff was subjected, despite its knowledge of the conduct, discriminatorily denied plaintiff equal treatment on the basis of sex, violation of *§ 46a-60(a)(1)*.

49. As here above described, Defendants Fairchild and Clark discriminated against Plaintiff on the basis of sex and created a hostile work environment

50. As herein above described the defendant Clark aided and abetted the creation of hostile work Environment sexual harassment.

51. In so treating plaintiff, and in ipso facto constructively terminating plaintiff, all because of her sex, defendant subjected to illegal discrimination.

52. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic physical and emotional harm.

## THIRD COUNT (42 U.S.C. § 2000 et seq, TITLE VII-RETALIATION TO ALL DEFENDANTS)

53. Plaintiff hereby repeats and realleges paragraphs 1 to 52 as if more fully set forth herein.

54. By failing to take appropriate corrective action and continuing the harassment and in fact condoning same, and effectively allowing it to escalate in response to plaintiff's complaints, defendant acted in retaliation for plaintiff's effort to protect her rights, in violations of *42 U.S.C. §2000e-3*, Title VII.

55. After Plaintiff made her sexual discrimination and harassment complaint, she was given an annual review for the first time in three (3) years and cited for being tardy even though she worked the hours assigned by Fairchild. She was also assigned a permanent schedule and accused of taking too many days off even though they approved said days off. Fairchild violated 42 U.S.C. *§2000e-3* through *§2000e-17*, Title VII.

56. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic physical and emotional harm.

## FOURTH COUNT (C.G.S. § 46A-60(4)-RETALIATION TO ALL DEFENDANTS)

57. Plaintiff hereby repeats and realleges paragraphs 1 to 56 as if more fully set forth herein.

58. By failing to take appropriate corrective action and continuing the harassment and in fact condoning same, and effectively allowing it to escalate in response to plaintiff's complaints, defendant acted in retaliation for plaintiff's effort to protect her rights, in violations of *C.G.S 46A-60(4)*.

59. As a result of defendant's conduct, plaintiff has suffered and will continue to suffer past and future economic physical and emotional harm.

## FIFTH COUNT (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS TO ALL DEFENDANTS)

60. Plaintiff hereby repeats and realleges paragraphs 1 to 59 as if more fully set forth herein.

61. Defendant's conduct in the termination process was unreasonable and improper. The unsuitable work environment was such that the Plaintiff was forced to leave her job.

62. Defendant knew or should have known that as a result of its conduct, plaintiff would suffer emotional distress or that such distress was a likely result of its actions and that further, such emotional distress might result in illness or bodily harm.

63. Defendant's reckless conduct as described above has caused plaintiff to suffer severe and continuing mental and emotional distress and anguish. Defendant is justly liable to plaintiff for the damage she has suffered and will continue to suffer.

**SIXTH COUNT (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS TO DEFENDANT CHARLES CLARK)**

64. Plaintiff hereby repeats and realleges paragraphs 1 to 63 as if more fully set forth herein.

65. By the above acts, defendant intended to inflict emotional distress upon plaintiff.

66. Defendant knew or should have known that this conduct would have caused plaintiff emotional distress.

67. The emotional distress defendant inflicted upon plaintiff was extreme and outrageous.

68. As a result of defendant's actions, plaintiff suffered and continues to suffer severe emotional distress, embarrassment and humiliation.

**SEVENTH COUNT NEGLIGENT SUPERVISION AND RETENTION TO ALL DEFENDANTS)**

69. Plaintiff incorporates the allegations contained in the preceding paragraphs 1 to 68 as though fully set out herein.

70. Clark was placed in a position of senior machinist as well as in charge of purchase orders at Fairchild. He gave directives to other employees including the Plaintiff.

71. The acts of harassment and retaliation perpetrated against Plaintiff by Clark and others while they were employed at Fairchild were in the course and scope of their employment.

72. Fairchild knew or reasonably should have known of their employees' conduct with Plaintiff and others and knew or reasonably should have known that this conduct would harm Plaintiff and others.

73. Fairchild owed a duty of care to Plaintiff and other similarly situated female employees to provide a safe work environment, which included the duty to protect them from sexual harassment and other inappropriate behavior perpetrated by Clark or any other Fairchild

employees, as well as they duty to enforce its policies designed to protect employees from harassment and retaliation.

74. Fairchild failed to effectively monitor Plaintiff's work environment and its employees' conduct, failed to adequately investigate complaints of sexual harassment and retaliation, failed to take effective remedial action, and failed to provide effective training to all employees concerning the prohibition against, the prevention of, and the proper investigation of inappropriate conduct. Fairchild thereby failed to eradicate the acts of sexual harassment, retaliation and inappropriate behavior exhibited toward the Plaintiff.

75. Fairchild failed to properly supervise Clark, and retained him in his supervising/senior position despite his conduct, thereby breaching its duty to Plaintiff and others.

76. Fairchild knew or should have known that if it did not affectively monitor the work environment and its employees' conduct, that if he did not adequately investigate complaints of sexual harassment action, and that if it did not provide effective training to all employees, harm to employees would likely be caused by such acts and omissions.

77. As a direct and proximate result of Fairchild's failure to supervise its employees and failure to take adequate measures to prevent, remediate and eradicate sexual harassment and retaliation, Plaintiff has suffered harm.

78. Because the conduct of its employees occurred while acting within the course and scope of their employment and with Fairchild's knowledge and implied consent and approval, Fairchild is responsible for the injuries to Plaintiff and for damages.

79. As a direct and proximate result of Defendant's inaction and negligent supervision of its agents and employees, Plaintiff has sustained damages including but not limited to severe

humiliation, embarrassment, degradation, and severe emotional and physical distress, sever anxiety, sleeplessness, psychological harm, lack of libido, as well as economic losses.

80. Defendant's employees and agents acted in a willful, malicious, intentional and unlawful manner, and in reckless disregard of Plaintiff's rights, and Plaintiff demands and is entitled to punitive damages in an amount which bears reasonable relationship to her actual damages.

**EIGHTH COUNT BATTERY (AS TO DEFENDANT CHARLES CLARK)**

81. Plaintiff incorporates all previous paragraphs 1 to 80 by reference and further alleges that all physical contact she had with Defendant Clark, including but not limited to those instances of unwarranted kicking, pushing/shoving in the back and throwing purchase orders at various parts of her anatomy constituted individual touches.

82. Plaintiff further alleges that all such contact was highly offensive and indeed outrageous.

83. Plaintiff further alleges that Defendant Clark initiated all such contact intentionally.

84. Plaintiff further alleges that she did not consent to any of the contact.

85. Plaintiff further alleges that the touches arose as a result of Defendant's supervisory/supervisor position over Plaintiff.

86. As a direct and proximate result of Defendant's unconsented physical contact, Plaintiff has sustained numerous physical injuries some of which are permanent in nature, including but not limited to, severe emotional distress, depression, humiliation, embarrassment, and other related physical injuries.

87. As a further direct and proximate result of Defendant Clark's unconsented physical contact, Plaintiff has incurred and will continue to incur substantial expenses for medical care and attention, has suffered and will continue to suffer much physical pain and mental anguish and has suffered a loss of wages and a loss in her wage earning capacity.

**WHEREFORE**, the plaintiff demands:

1. Compensatory and consequential damages, including but not limited to lost wages, commissions, bonuses, and the value of all other employment benefits in an amount to be determined by the trier of fact, with interest from the date when said sums were due:

2. Common law punitive damages;

3. Front pay and/or other equitable relief, including reinstatement;

4. Attorney's fees and costs, prejudgment interest and costs;

5. Pre and Post judgment interest as applicable;

6. An injunction permanently enjoining defendant, its agents, employees, successors, signs and all persons who acted in concert and participation with defendant, from engaging in any discriminatory or retaliatory employment practice; and

7. Any such additional and further relief which this Court may deem just and proper.

THE PLAINTIFF,
SUSAN SHEA


BY /s/ John Sodipo
John Sodipo, Esq.
Jacobs & Sodipo, LLC
65 Memorial Road, Ste 545
West Hartford, CT 06107
Tel: 860-233-2245
Fax: 860-233-8436
Fed.: CT 28126
Email: Admin@jacobssodipo.com
john@jacobssodipo.com